# IN THE UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF MISSOURI
# ST JOSEPH DIVISION

Jacob Ingersoll, et al., on behalf of      )
themselves and others similarly situated,  )
               Plaintiffs,      )
     v.                                    )
                               ) No. 10-6046-CV-SJ-FJG
Farmland Foods, Inc.,                      )
               Defendant.       )

## ORDER

Before the Court are (1) Defendant's Motion for Protective Order (Doc. No. 62); (2) Non-Party Smithfield Foods, Inc.'s Motion for Protective Order (Doc. No. 68); (3) Plaintiff's Motion to Compel Discovery Concerning Plaintiffs' First Set of Requests for the Production of Documents (Doc. No. 74); (4) Plaintiffs' Motion to Compel Discovery Concerning Electronically Stored Information (Doc. No. 76); (5) Plaintiffs' Unopposed Motion to Amend the Scheduling Order (Doc. No. 89); and (6) attorneys T. Joseph Snodgrass, Kelly Swanson, Troy Tatting, James J. Simeri, Matthew R. Fields, David T. Butsch, and Andrew Farwell, as well as the law firms Larson King, LLP, Butsch Simeri & Fields, LLC, and The Farwell Law Firm, LLC's Motion to Withdraw as Counsel for Plaintiff Richard A. Truitt (Doc. No. 79). Each will be considered, below. As a preliminary matter, defendant's request for oral argument (see Doc. No. 63) will be **DENIED.**

## I.    Background

Plaintiffs are a group of current production and support workers employed by Defendant Farmland Foods, Inc. ("Farmland") at its pork processing plant located in Milan, Missouri. Defendant Farmland Foods, Inc. is a subsidiary of Smithfield Foods, Inc., and is included within a group of companies referred to by its parent as "The Smithfield Foods

Family of Companies." Smithfield Foods is not yet a defendant in this action.

Plaintiffs allege that defendant has a policy of not fully compensating employees for all the time spent working at defendant's plant, specifically by not fully compensating plaintiffs for time spent donning and doffing personal protective equipment ("PPE"). Plaintiffs assert that they seek certification of a Fair Labor Standards Act ("FLSA") collective action, as well as a Rule 23 class action for Missouri Minimum Wage Law ("MMWL") claims.

The parties encountered difficulties in preparing a proposed scheduling and trial order, and on August 5, 2010, the Court ordered them to undertake their best efforts to meet in a collegial fashion and provide the Court with a proposed scheduling and trial order, indicating any disagreements as to deadlines within their proposal. See Order, Doc. No. 28. On August 11, 2010, the parties submitted a proposed scheduling and trial order, in which they disagreed about practically every deadline, as well as whether discovery in this matter ought to be bifurcated into class and merits discovery. See Doc. No. 31. On September 23, 2010, the Court entered its Order finding that discovery should be divided in two phases, and that Phase One should focus on discovery relating to the named plaintiffs' claims and class certification issues, and that Phase Two discovery would focus on issues relating to the class, such as damages. Order, Doc. No. 38. The Court, however, found that, to the extent that the issues in the two phases of discovery overlapped, the parties should endeavor to complete discovery in Phase One. Id. The Court set a deadline of April 1, 2011, for close of discovery related to class certification. Id.

For several months thereafter, the parties did not request Court intervention in

discovery. However, beginning in early January 2011, the many discovery disputes that are the subject of this Order came to the Court's attention. The Court will consider each in turn.

## II.    Defendant's Motion for Protective Order (Doc. No. 62)

Defendant moves for a protective order limiting the scope of Plaintiff's Rule 30(b)(6) Notice served on November 9, 2010.[1]  Defendant indicates that the Rule 30(b)(6) notice covered seven pages and forty-one numbered topics, excluding subparts.  Defendant indicates that the Rule 30(b)(6) notice is improper in that (1) while plaintiffs and potential members of the class as currently pled are former, current, or future employees of defendant's Milan facility, plaintiffs seek information related to defendant's other facilities; (2) plaintiffs seek information regarding policies and procedures which were not in effect on or after April 29, 2007 (three years before the filing of plaintiffs' complaint, and the outside date of the limitations period); (3) plaintiffs seek information related solely to the merits of their claims or defendant's defenses, all of which have no relation to the issue of class or collective action certification[2]; (4) plaintiffs' counsel admits he has listed some Rule 30(b)(6) topics for the purpose of trying to develop claims against non-parties so that he can add them as defendants; and (5) the 30(b)(6) notice demands encyclopedic knowledge from a witness of numerous topics and broad terms, so much so that any deposition covering these topics could not be completed within the one day of seven hours permitted by the Federal Rules of Civil Procedure.

---

[1]Defendant first notified the Court of this discovery dispute on January 4, 2011. The Rule 30(b)(6) deposition in question was set for January 6, 2011.  The Court, by Order dated January 5, 2011, quashed the Rule 30(b)(6) deposition.

[2]As the Court noted above in its statement of the case, the Court did not preclude plaintiffs from conducting discovery as to the merit of plaintiffs' claims in Phase One: "Phase One should focus on discovery relating to the named plaintiffs' claims and class certification issues."  Doc. No. 38.

In response, plaintiff indicates that defendant has been delinquent in informing plaintiff as to who custodians of electronically stored information ("ESI") are, the corporate hierarchy for defendant, identity of potential persons involved, or other basic information that could be used for form an ESI search, and that now defendant seeks to preclude plaintiff from finding similar information in the 30(b)(6) deposition. Plaintiff further indicates that defendant failed to provide any evidentiary support for its claim that the discovery sought is overly broad and unduly burdensome. Plaintiff indicates that many of the topics just ask for "basic information" that can be covered through a short line of questioning.

In its reply suggestions, defendant notes that these topics are burdensome, despite plaintiff's characterization, and several topics present issues that are better addressed in written interrogatories.

The Court will consider defendant's specific objections below.

A.    Relevant Time Period

Defendant indicates that at least 29 of the 41 listed topics exceed the three-year limitations period, with Topic Nos. 4-6, 16-19, 25-27, 30-32, and 34, containing no temporal limitation whatsoever, and Topic Nos. 2, 3, 7-13, 17, 28, 29, 35, 40, and 41, seeking information the predates the applicable statute of limitations. Defendant seeks a ruling limiting the topics enumerated in Plaintiff's 30(b)(6) deposition notice to defendant's policies and procedures that have been in effect from April 29, 2007 to the present.

Plaintiff responds that defendant does not provide any evidence as to when the relevant donning and doffing decisions were made, by whom, at what company, and at what location. Plaintiff argues the decisions could have been made more than 10 years ago, and that it is likely that whatever decisions were made were influenced by circumstances existing prior to the limitations period.

Defendant also objects to Topics 4 and 5 to the extent they are not limited to issues concerning donning and doffing, and to the extent that Topic No. 5 seeks information about

agencies in other states.

After considering the arguments in the parties' briefs, the Court will grant defendant's motion in part and will limit the following Topic Nos. to the time period from **April 29, 2005** to the present: Nos. 4, 5, 6, 7, 8, 9, 10, 11, 16, 18, 19, 25, 26, 27, 30, 31, 32, 34, 35, and 40. Defendant's objections to the temporal limitations contained in Topic Nos. 2, 3, 12, 13, 17, 28, 29, and 41 are **OVERRULED**. Further, the Court will **SUSTAIN** defendant's objections to Topic Nos. 4 and 5 to the extent they seek information not limited to donning and doffing investigations or claims, and to Topic No. 5 to the extent it seeks information about agencies in states other than Missouri.

B.    Relevant Geographical Location

Defendant objects to Topic Nos. 2-6, 16-19, 24-27, 28, 31-32, 34, and 37-40, as they contain no geographic limitation at all, or they seek information regarding other Farmland facilities. Defendant also objects because the deposition demands a witness that is knowledgeable about state laws in five states other than Missouri. Defendant seeks a ruling limiting the topics enumerated in Plaintiff's 30(b)(6) notice to the Milan facility.

Plaintiff responds that (1) Topic No. 5 does not ask for a witness that is knowledgeable about state law in five states other than Missouri–it just asks for identities and titles of persons most knowledgeable about FLSA and state wage and hour law compliance from January 1, 2000 to the present; (2) in its motion, defendant does not provide any location as to where the donning and doffing decisions were made or where the Farmland and/or Smithfield corporate executives who were involved with donning and doffing decisions worked; and (3) Farmland and Smithfield are involved in donning and doffing lawsuits involving plants throughout the United States. Plaintiff states that Farmland's privilege log and the documents it has produced suggest that Farmland's donning and doffing decision-making was not undertaken at the local plant level. Plaintiff also suggests that plaintiffs are well within their rights to conduct discovery to determine

if it is appropriate to certify non-Milan employees within the FLSA class.

Defendant replies that decisions made elsewhere affecting other facilities and policies at other facilities or companies are irrelevant to plaintiffs' claims, as are lawsuits regarding other facilities. Defendant indicates the 30(b)(6) deposition should not be a fishing expedition for entrepreneurial plaintiffs' counsel. Further, defendant states that certain deposition topics are overbroad and burdensome on their face, such as Topic No. 5, which seeks testimony regarding any investigations or claims, without time limitation, involving agencies of five different states and any of Farmland's facilities, including any communications between Farmland and officials from any of those states regarding "wage and hour compliance, interpretation, claims, or complaints." Doc. No. 67, pp. 5-6.

Defendant's motion for protective order as to geographic location is **SUSTAINED.** The topics enumerated in Plaintiff's 30(b)(6) notice will be limited to the Milan facility and any decisions made at other locations that affect the donning and doffing pay policies and/or practices at the Milan facility. Discovery regarding the pay policies and practices at other Farmland facilities is not relevant to the claims as currently pled by plaintiffs.

C.     Merits Discovery

Defendant argues that plaintiffs should not be allowed to use the 30(b)(6) deposition as a means of obtaining merits discovery that is unrelated to the issue of whether the Court should certify this case as a class or collective action. Defendant states that "at least 24 of the 41 topics (Nos. 8-11, 13-16, 21-27, 30-32, and 35-40) are relevant only to the merits of claims or defenses rather than issues related to class or collective action certification." See Doc. No. 63, p. 10. (Defendant states that plaintiffs' counsel also admitted during the December 20 conference that Topic Nos. 33 and 35 are related to anticipated defenses.) Defendant states that plaintiff refused to limit the above-referenced topics because there is some overlap between class certification and merits discovery. Defendant states that there is a difference between information plaintiff should be allowed to discovery before the

Court has decided whether the case should be certified, and information that is only discoverable if and after the plaintiff has obtained certification. <u>See</u> <u>Bird Hotel Corp. v. Super 8 Motels, Inc.</u>, No. 06-4073, 2007 U.S. Dist. LEXIS 7513, at *1 (D. S.D. Feb. 1, 2007).

Plaintiff argues that the Court previously indicated its preference for allowing discovery to take place in Phase One, if overlap between certification and merits issues exists. Defendant replies that plaintiffs are not just requesting "leeway," but rather are asking the Court for merits discovery to proceed in full now.

The Court finds that plaintiffs have too broadly interpreted the Court's previous order, and are seeking discovery via a 30(b)(6) corporate deposition beyond what is necessary to support their motion for class or collective action certification. The Court finds that defendant's motion for protective order should be **GRANTED** as to Topic Nos. 8, 9, 10, 11, 14, 15, 16, 21, 22, 23, 24, 25, 26, 27, 33, 35, 36, 37, 38, 39, and 40. The Court will **DENY** defendant's motion for protective order in part, however, as certain of plaintiffs' topics would be appropriate for corporate representative deposition, including Topic Nos. 13, 30, 31, and 32.

D.     Claims against Non-Parties

Defendant indicates that plaintiff wishes to use the 30(b)(6) deposition to develop claims against non-parties and name them as additional defendants, and that improper demands of this type include Topic Nos. 20-23 and 30-39. Defendant states these questions are improper because (1) they go beyond the question as to whether the Court should certify class claims against Farmland; and (2) this tactic is improper under <u>Ashcroft v. Iqbal</u>, 129 S.Ct. 1937 (2009) and <u>Bell Atl. Corp. v. Twombly</u>, 550 U.S. 544 (2007), as defendant argues that "a party is not entitled to conduct discovery about claims against a person or entity unless it first has satisfied the pleading requirements to show that it has a legally cognizable claim against that person." <u>See</u> Doc. No. 63, p. 11. Defendant

indicates that expanding discovery to include Farmland's parent company, Smithfield Foods, vastly exceeds the scope of proper discovery in this case. Farmland also indicates it opposes these topics because they seek information unrelated to the Milan facility and unrelated to policies in effect on or after April 29, 2007.

Plaintiff responds that it is seeking discovery to determine whether Smithfield and/or certain Farmland or Smithfield corporate executives should be added, as well as whether Farmland should be considered an "employer" of any employees of temporary agencies or independent contractors. Plaintiff indicates that it would be better to elucidate this information now rather than later, as adding additional entities at the outset of the case will avoid multiple rounds of certification discovery and briefing for each new defendant added.

Plaintiff further indicates that Iqbal and Twombly cannot be used to keep plaintiffs from seeking discovery to identify additional potential defendants, when plaintiffs' pending cause of action is not subject to a Rule 12(b)(6) motion to dismiss. Plaintiffs identify other cases finding that, where plaintiffs do not know the identities of other defendants prior to the filing of a complaint, they can use discovery to find them. See Munz v. Parr, 758 F.2d 1254, 1258 (8th Cir. 1985).

Defendant replies that discovery regarding policies and practices at other facilities and other companies is irrelevant to the question of whether the Court should certify the existing claims against Farmland. Defendant also argues that plaintiffs have never worked anywhere but the Milan plant, have no standing to represent individuals employed elsewhere and have pleaded no claims involving other facilities or companies. Defendant argues that plaintiffs could not satisfy the Supreme Court's standards in Iqbal or Twombly even if they pled claims against other parties.

The Court finds defendant's argument regarding the holdings of Iqbal and Twombly to be unsupported by existing law, and the Court does not want to extend the existing law under the circumstances of this discovery dispute. The Court can find no case law

whatsoever interpreting Iqbal/Twombly to preclude discovery when there is no motion to dismiss pending. Without evidence or pleadings, the Court has no idea whether there were individual decision-makers at Farmland or Smithfield Foods who could be held liable under the FLSA or state laws. At this stage, the Court should not be in the business of foreclosing plaintiffs' recovery.

That does not mean, however, that plaintiffs are entitled to all the discovery they seek. See Advisory Committee's Notes to Fed. R. Civ. P. 26(b)(1) (indicating that the 2000 rule change "signals to the court that it has the authority to confine discovery to the claims and defenses asserted in the pleadings. . . ."). Further, the Court again notes that discovery at this time is limited to class or collective action certification issues. The Court will **GRANT** defendant's motion for protective order as to the issues raised in Topic Nos. 20, 21, 22, 23, 33, 35, 36, 37, 38, and 39. Defendant's motion for protective order is **DENIED** as it relates to the issues raised in Topic Nos. 30, 31, 32, and 34.

E.      Legal Conclusions

Defendant objects to Topic Nos. 7, 8, and 33 because the topics involve legal questions or ask for a legal conclusion. Defendant indicates that whether anyone at Farmland answered legal questions regarding the propriety of the policies is irrelevant to class certification.

Defendant also indicates certain topics are improper to the extent they seek information protected by attorney-client privilege or the work product doctrine, such as Topic No. 14. Plaintiff responds that Topic No. 14 only seeks a determination as to whether Farmland will assert an advice of counsel defense, and if so, the locations of potential custodians and documents. Plaintiff states that assertion of this defense results in an automatic waiver of privilege, and may impact certification related decisions. Defendant replies that a Rule 30(b)(6) deposition is not the proper format for discovering trial or litigation strategy; instead, this should be sought in contention interrogatories. Additionally,

defendant notes that there has not been a waiver of attorney-client privilege or the attorney work-product doctrine.

Defendant also indicates that Topic No. 1, seeks testimony as to "the procedures used by Farmland in searching, locating, gathering and producing documents responsive to Plaintiffs' requests for production of documents." Defendant states this is overbroad, unduly burdensome, and relates to matters involving the assistance of counsel (and are protected by attorney-client privilege). Defendant indicates plaintiff could receive this information in a less burdensome manner by propounding standard interrogatories. With respect to Topic No. 1, plaintiff responds that "Corporate document custodian search topics are routine and commonly-used. Farmland offers no evidence to support a burden defense." See Doc. No. 64, p. 15. Defendant replies that "plaintiffs fail to provide any authority to support their position." See Doc. No. 67, p. 10.

Defendant also indicates that Topic No. 24 relates to potential defenses, which is irrelevant to class certification issues.

The Court concurs with defendant that the requests in Topic Nos. 1, 7, 8, 14, 24, and 33 ask for prohibited legal conclusions, seek information protected by privilege or work product doctrines, relate to potential defenses, and/or are unduly burdensome. Defendant's motion for protective order is **GRANTED** as to these topics.

### III. Smithfield Foods' Motion for Protective Order (Doc. No. 68)

Non-party Smithfield Foods seeks a protective order, asking the Court to enter an order "confirming its prior Order quashing the proposed 30(b)(6) deposition of Smithfield Foods and contemporaneous request for documents." See Doc. No. 68, p. 1.

In particular, Smithfield Foods argues (1) it is not a defendant in this suit, and therefore, under Twombly and Iqbal, plaintiffs are not entitled to take any discovery against Smithfield Foods for the purpose of developing a claim against it unless they first plead a claim that is sufficient under the Supreme Court's standards; (2) plaintiffs' proposed

discovery as to Smithfield Foods violates the apex deposition doctrine, which precludes depositions of high-level corporate executives unless the executive has unique or special knowledge of the facts at issue, and other less burdensome avenues for obtaining this information have been exhausted; (3) the discovery is overly broad, unduly burdensome, and not calculated to lead to the discovery of admissible evidence; (4) certain information sought is protected by attorney-client privilege; and (5) plaintiffs' discovery includes broad requests for ESI from sources that are potentially not reasonably accessible.

A.      Iqbal and Twombly

Smithfield Foods argue that Iqbal and Twombly prohibit a plaintiff from taking any discovery from it without first successfully pleading a facially plausible claim for relief against it.  Smithfield Foods argues that under those cases, plaintiffs are not entitled to take any discovery unless they have first pleaded sufficient facts to support a claim for relief that is plausible on its face.  Here, Smithfield Foods argues that it is not a defendant yet, so plaintiff has not yet pleaded a claim for relief.  Smithfield Foods also argues that the only point of plaintiff's discovery sought here is to garner sufficient information to develop a claim against it, a non-party.  Smithfield Foods argues that Fed. R. Civ. P. 26(b)(1) was amended in 2000 to limit the scope of discovery to those claims or defenses that were actually asserted in the pleadings, signaling that parties should not use discovery to develop new claims or defenses that are not identified in the pleadings.  See Fed. R. Civ. P. 26 advisory committee's notes.  Smithfield Foods broadly argues: "The Supreme Court has established that a plaintiff is not entitled to take any discovery against a person or entity until after the plaintiff has first pleaded a facially plausible claim for relief against that person or entity."

The Court finds that Smithfield Foods' proposed interpretation of Iqbal and Twombly to be too broad.  Otherwise, there would be no way that a party could take discovery from a non-party at all.  That clearly is not the case under the Federal Rules of Civil Procedure.

The Court has searched other federal court rulings, and can find no authority for using Iqbal and Twombly to prevent discovery when no motion to dismiss under Rule 12(b)(6) has been filed. Smithfield Foods' motion for protective order due to Iqbal and Twombly must be **DENIED**.

B.     Apex Deposition Doctrine

Smithfield Foods argues that the "apex deposition doctrine" precludes parties from taking the deposition of high level corporate executives unless that party satisfies certain conditions.  To obtain a deposition from a high-level corporate official, parties must demonstrate (1) the executive has unique or special knowledge of the facts at issue, and (2) other less burdensome avenues for obtaining the information sought have been exhausted. Wal-Mart Stores, Inc. v. Vidalakis, 2007 U.S. Dist. LEXIS 95696, at *1 (W.D. Ark. Dec. 28, 2007).  Smithfield Foods argues that its entire company qualifies as a "high-level corporate official," as Smithfield Foods is just a holding company, and is the sole shareholder of Farmland.  Smithfield Foods argues, without providing any support whatsoever (such as an affidavit explaining the corporate ownership structure), that it "is not itself an operating company, but rather the owner of other companies.  Its employees are a small number of high-level corporate executives and their office staff."  Smithfield Foods argues that plaintiffs' proposed 30(b)(6) deposition of Smithfield, therefore, seeks the deposition of a corporate executive higher than even the CEO of Farmland.  Smithfield Foods also indicates that plaintiffs have not exhausted less burdensome means to obtain this information, such as depositions of Farmland employees or interrogatories to Farmland addressing these questions.

In response, plaintiffs note that if the Court granted this motion on this basis, Smithfield Foods would "become the first corporation to be completely immunized under the law from Rule 30(b)(6) discovery."  The Court agrees with plaintiff that the "apex deposition doctrine" is inapplicable here, as all the applications the Court has seen of it are

where parties have noticed the deposition of a specific high-level officer of a corporation who lacks knowledge of the underlying facts. Thus, the "apex deposition doctrine" does not seem applicable to a 30(b)(6) deposition, where the corporation can name anyone it chooses to respond to the deposition (and, presumably the corporation would name someone with personal knowledge). Therefore, Smithfield Foods motion for protective order is **DENIED** on this basis.

> C.   Overly Broad, Unduly Burdensome, and Not Calculated to lead to the discovery of admissible evidence

Smithfield Foods argues that subpoenas issued to non-parties pursuant to Fed. R. Civ. P. 45 are subject to Rule 26(b)(1)'s relevance requirement. See Ireh v. Nassau Univ. Med. Ctr., 2008 U.S. Dist. LEXIS 76583, at *5 (E.D. N.Y. Sept. 17, 2008); see also Echostar Comms. v. The New Corp., 180 F.R.D. 391, 394 (D. Colo. 1998)(denying motion to compel as to non-parties because plaintiff had not exhausted discovery against the defendant). Here, Smithfield Foods argues that the topics in plaintiffs' 30(b)(6) deposition notice to it are cumulative of those in the 30(b)(6) deposition of Farmland. Smithfield Foods argues that "Plaintiffs have not even taken the deposition of Farmland."

Smithfield Foods also argues that Topics 2, 5, and 8-12 in Schedule A and Topics 1-4, 6-7 and 9 in Schedule B are overly broad and not calculated to lead to discovery relevant to the claim against Farmland, as they broadly cover matters related to the corporate relationship between Smithfield Foods and defendant Farmland.

Plaintiffs respond that the Court can overrule Smithfield Foods' "unduly burdensome" objections because Smithfield Foods has failed to provide any support of the undue burden or expense. Further, plaintiffs argue that the "overly broad" objections should be rejected because plaintiffs are simply seeking information about the corporate relationships between Smithfield Foods, Farmland, and Farmland's predecessor at Milan, Premium Standard Farms, and how these corporate relationships impact Farmland's employment and compensation policies and practices. With respect to the argument that the discovery is

unnecessarily cumulative, plaintiffs respond that defendant Farmland has likewise objected to any discovery concerning the interrelationship between itself, Smithfield, and Premium Standard Foods. Finally, plaintiffs argue that this discovery is calculated to lead to the discovery of admissible evidence, noting the already-produced evidence that Smithfield Foods' employment policies are applicable to plaintiffs.

After reviewing plaintiffs' and Smithfield Foods' briefs and the discovery sought by plaintiff, the Court concludes that <u>all</u> the discovery sought from Smithfield Foods is overly broad and unduly burdensome. In particular, while non-party discovery can be undertaken, at this point in time there is no indication that plaintiffs cannot get the same or similar information from defendant Farmland. <u>See</u> Rule 26(b)(2)(C)(i). Further, although the Court has denied Smithfield Foods' motion as it relates to <u>Iqbal</u> and <u>Twombly</u>, the Court notes that it is left with the firm impression that the primary reason plaintiffs are seeking discovery against Smithfield Foods is in an attempt to build a case against Smithfield Foods (not to aid their case against defendant). This is improper. <u>See</u> Advisory Committee's Notes to Fed. R. Civ. P. 26(b)(1). Instead, if plaintiffs intend to plead a cause of action against Smithfield Foods, plaintiffs should seek leave to file an amended complaint. Therefore, Smithfield Foods' motion for protective order will be **GRANTED** at this time.[3]

D.    Attorney-Client Privilege

Smithfield Foods argues that plaintiffs' nine documents requests attempt to invade the attorney-client privilege, and Smithfield Foods should not be subject to the burden and expense of "researching, analyzing and cataloguing potentially voluminous amounts of documents (including the request for all documents relating to 19 lawsuits) for the purposes of providing an extensive privilege log in response to Plaintiffs' overly broad document

---

[3]The Court may reconsider this protective order if plaintiffs are able to demonstrate that either (1) they can state a claim against Smithfield Foods, or (2) Smithfield Foods is likely to have specific discovery that cannot be obtained from defendant.

requests. . . ." Plaintiffs respond that Smithfield Foods has failed to demonstrate that all the requested materials are protected from discovery; instead, all Smithfield Foods has provided is the conclusory statements of counsel.

At this time, Smithfield Foods' motion for protective order will be **SUSTAINED** on this basis, as well.

E.    ESI not reasonably accessible

Smithfield Foods asserts "Here, Plaintiffs' [sic] have identified 9 broad areas to produce electronically stored information. If the Court does not prohibit Plaintiffs' requests, Smithfield Foods requests the opportunity to brief this issue consistent with the Rule 26(b)(2) protections." Plaintiffs respond that the conclusory statement of a lawyer is insufficient to demonstrate that it would unduly burdensome to comply with a request. Plaintiffs further indicate that Smithfield's request that it be allowed to postpone making such a showing until some unspecified time would cause unnecessary delay. Further, plaintiffs state that Smithfield's assertion of undue burden on ESI is inconsistent with its assertion that it is a mere holding company comprised of only a "small number of high-level corporate executives and their office staff." See Doc. No. 69, p. 12.

The Court does not believe a decision must be delayed on this matter and is not in need of further briefing from Smithfield Foods. Instead, as will be seen in the Court's analysis of plaintiffs' motion to compel production of ESI (below), the Court finds that much of the information sought by plaintiffs is beyond the scope permissible at this stage of the litigation. Smithfield Foods' motion for protective order will be **GRANTED** on this basis, as well.

IV.   **Plaintiffs' Motion to Compel (Doc. No. 74)**

Plaintiffs indicate that Farmland refuses to produce discovery related to the following: (1) putative class members; (2) temporary staffing agencies/joint employers; (3) donning and doffing issues; (4) Farmland's defenses; (5) other donning and doffing

lawsuits, related agency investigations, and collective corporate knowledge of wage and hour law; (6) more than a "sample" production of payroll and punch-clock procedures; (7) basic information concerning its corporate structure; and (8) litigation holds and preservation efforts.

Plaintiffs indicate they served their First Set of Requests for Production on Farmland on July 20, 2010, that Farmland served responses and objection on August 20, 2010, and documents were first produced on October 12, 2010. Plaintiffs indicate that defendant provided "boiler-plate objections," refusing to answer a number of requests in their entirety and limiting responses in geographic and temporal scope.

A.    Putative Class Members

Plaintiffs seek responses to the following requests:

**DOCUMENT REQUEST NO. 2:** That portion of your records that shows the full names, last known addresses, last known telephone numbers, and job titles of each production and support employee for the three years preceding the date of filing of the original Complaint, to the present time.

**DOCUMENT REQUEST NO. 3:** That portion of your records that shows, for each production employee, the number of hours worked per week for the three years preceding the date of filing of the original Complaint, to the present time.

**DOCUMENT REQUEST NO. 4:** All documents, including the entirety of any database(s) that show, for each hourly production or support employee working in Milan plant, the amount of remuneration paid for each of the hours worked, for the three years preceding the date of filing of the original Complaint, to the present time.

Plaintiffs indicate that this is basic information about the putative class members, and is limited in temporal and geographic scope, yet defendants fail to provide responsive information. Plaintiffs indicate that contact information, job titles, the number of hours worked, and the amount of compensation paid to other employees are relevant to Plaintiffs' ability to show similar situation, numerosity, typicality, and commonality. Plaintiffs further indicate that contact information would allow them to gather evidence to bolster their arguments that employees similar don, doff and sanitize personal protective equipment

("PPE") without full compensation.

Defendant responds that this request is not limited to documents relevant to class certification; instead, this discovery is as though a class had already been certified. In particular, defendant indicates that plaintiffs are seeking information as to individuals that are not named plaintiffs (whereas, the case law generally provides that prior to certification, plaintiffs are entitled to only limited information, such as the names and addresses of employees at the facility, not the "number of hours worked" or "amount of remuneration paid"). Defendant further notes that Request No. 2 is not limited by geographic scope or by the three years prior to the filing of the original complaint.

The Court finds that plaintiffs' motion to compel should be **GRANTED IN PART**. Defendant shall produce a list of the full names and last known addresses of the employees that worked in the Milan plant for the three years preceding the date of filing of the original Complaint, to the present time. The motion to compel as to the remaining information in requests 2-4 will be **DENIED.**

B.    Temporary staffing agencies/joint employers

Plaintiffs seek responses to the following requests:

**DOCUMENT REQUEST NO. 5:** All documents related to any temporary staffing agency who provides or provided any production or support employees to work at your Milan plant, including but not limited to any contract, agreement, policy, or report between Farmland and any such agency, any documents reflecting the hourly pay scale or pay rate for workers provided by any such agency, and communications or other documents exchanged between any agent or employee of such agency and any Farmland employee.

**DOCUMENT REQUEST NO. 6:** All documents concerning the identities of persons: (1) employed as production or support employees in your Milan plant; and (2) who are current or were former workers for any temporary employment agency that provides employees to work in your Milan plant.

Plaintiffs indicate that documents responsive to these requests are necessary because temporary laborers can also be included in the class in this case. See Helmert, 2010 WL 779321 at *3; Rutherford Food Corp. v. McComb, 331 U.S. 722, 729 (1947).

Plaintiffs note that these requests are limited to the Milan plant, and plaintiffs state in their motion that they further agree at this time to limit these requests to the time period three years prior to the filing of this lawsuit. Plaintiffs further indicate that documents produced in response to other requests demonstrate that Farmland uses workers hired through third parties (See Ex. D to Doc. No. 75).

Again, Defendant responds that this request is not limited to documents relevant to class certification. While plaintiffs indicate in their motion that they would agree to only seek requests for the three years prior to the filing of this lawsuit, the requests themselves are not so limited. Defendant further indicates that, as in requests 2-4, plaintiffs should be limited to getting the names and addresses of temporary employees, and that identifying information should be all that is needed at this stage of the litigation.

The Court finds that plaintiffs' motion to compel should be **GRANTED IN PART**. Defendant shall produce a list of the full names and last known addresses of any temporary employees that worked in the Milan plant for the three years preceding the date of filing of the original Complaint, to the present time. The motion to compel as to the remaining information in requests 5 and 6 will be **DENIED.**

C.    Donning and doffing issues

Plaintiffs seek responses to the following requests:

**DOCUMENT REQUEST NO. 11:** For any time periods, all documents evidencing communications to any employees, management or otherwise, concerning this lawsuit, the subject matter of this lawsuit or donning and doffing issues.

**DOCUMENT REQUEST NO. 12:** For any time periods, all documents evidencing communications amongst and between your employees, management or otherwise, that concern payment of wages for time spent donning, doffing, walking, sanitizing, or waiting.

**DOCUMENT REQUEST NO. 32:** For any time periods, all e-mails that relate to donning and doffing issues.

Plaintiffs indicate that the broad temporal and geographic scopes are necessary

18

here because of the underlying facts of this case. Plaintiffs indicate that other documents produced by Farmland show that donning and doffing issues have arisen before, and plaintiffs believe the evidence will likely show that Farmland addresses donning and doffing and plug time[4] issues on a corporate-wide basis rather than on an individual employee basis. Plaintiffs also state that the requests are designed to uncover names and identities of corporate decision-makers. Plaintiffs indicate that Farmland's privilege log demonstrates that sometime on or before January 6, 2006, Farmland anticipated litigation regarding donning and doffing (see Def's Priv. Log, Doc. No. 75, Ex. J, email from Jeff Gough cc'ing legal counsel re: "donning and doffing at Milan and Clinton plants"). Plaintiffs also note that the US Dept. of Labor (USDOL) conducted enforcement activities aimed at meat processing plants in the late 1990s, and the Supreme Court found in 2005 that donning and doffing activities should be compensated. IBP v. Alvarez, 546 U.S. 21 (2005).

Defendant indicates (1) it has already produced over 3,300 pages of documents, which included relevant, non-privileged documents related to donning and doffing, including payroll data showing the amount of additional compensation certain of the named plaintiffs received for time spent donning and doffing; (2) plaintiffs' requests are not limited by time period, and defendant has already expressly agreed to produce documents regarding donning and doffing policy decisions for the Milan facility made outside the three-year limitations period provided the policies were in effect during the applicable limitations period; and (3) the documents are not limited to the Milan facility, and the named plaintiffs are employed only at the Milan plant.

Plaintiffs reply that the 3,300 documents merely is a single banker's box of hardcopy documents, and when excluding redacted payroll records and charts, named plaintiffs' personnel files, and standardized manuals and spreadsheets, the production related to

---

[4]Plug time, as defined by plaintiffs, is a pre-determined amount of wages that defendant pays employees for time spent donning, doffing, walking, sanitizing, or waiting.

PPE and donning and doffing issues is scant. Plaintiffs indicate that in early February (in the middle of the briefing process on these motions), defendant produced a "Donning and Doffing" notice dated December 3, 2007, that supposedly "eviscerates Farmland's attempts to create arbitrary limitations on discovery." See Doc. No. 87, p. 3. The Notice provides:

> Donning and Doffing in the Meatpacking industry has been in the news frequently for the last several years. Two years ago, Premium Standard Farms [which was Farmland's corporate predecessor at the Milan plant] reviewed the legal requirements and implemented a method of pay for donning and doffing. Since that time, there have been other legal precedents that better defined what system is appropriate. Effective this month, we will adopt the method used by other Farmland plants. At the Milan Plant, we also made locker room changes to become more efficient. If you have any questions, please contact the HR Department.

Plaintiffs argue that this newly-produced document is "strategically belated production," and demonstrates that Farmland has "information related to its predecessor's investigation of donning and doffing issues, has conducted its own investigations of donning and doffing issues and reviewed related 'legal precedents' prior to April 2007." See Doc. No. 87, p. 4.

The Court finds that the discovery sought by plaintiffs is overly broad; plaintiffs have certainly not demonstrated that they need discovery for all time periods and all geographic locations at this time. Accordingly, plaintiffs' motion to compel is **DENIED**. Discovery on donning and doffing issues will be limited to two years prior to the start of the limitations period (beginning April 29, 2005), and to the Milan facility and any decisions made at other locations that affect the donning and doffing pay policies/practices at the Milan facility.

D.     Farmland's defenses

Plaintiffs seek responses to the following requests:

**DOCUMENT REQUEST NO. 13:** For any time periods, if you contend the *de minimis* defense applies to any claims of the Plaintiffs, all documents relating to this defense.

**DOCUMENT REQUEST NO. 14:** For any time periods, if you contend that you acted in good faith in not paying any of the wages claimed in this lawsuit, all documents relating to

this defense.

**DOCUMENT REQUEST NO. 15:** For any time periods, if you contend that you relied upon the advice of counsel in taking or not taking any actions relating to the claims or defenses in this lawsuit, all documents in your attorneys' files.

**DOCUMENT REQUEST NO. 19:** For any time periods, all documents relating to the claims or defenses at issue in this case or other similar lawsuits, administrative inquiry or administrative investigation.

**DOCUMENT REQUEST NO. 31:** For any time periods, all documents that support any of your affirmative defenses.

Plaintiffs indicate that they need this information to determine whether Farmland's defenses favor certification, and further argue that the temporal and geographic scope are "necessarily broad at this point in the case because the factual underpinnings for Farmland's defenses are not yet known." Plaintiffs argue that defendant has not provided any responsive information. Plaintiffs request that to the extent defendant refuses to produce this information, the Court strike defendant's affirmative defenses in their entirety.

Defendant responds: (1) these requests seek information related to defenses, some of which have not even been asserted in this matter; and (2) since there is bifurcated discovery, these issues should be reserved for phase two, as Farmland's defenses have no bearing on whether plaintiffs are similarly situated such that class treatment is proper.

Plaintiffs' motion to compel as to affirmative defenses is **DENIED**. Phase one discovery is for the merits of named plaintiffs' claims and information relevant to the certification of a class or collective action only.

      E.      Other donning and doffing lawsuits, related agency investigations, and collective corporate knowledge of wage and hour law

Plaintiffs seek responses to the following requests:

**DOCUMENT REQUEST NO. 17:** For any time periods, all pleadings, depositions and documents produced in other lawsuits similar to the present lawsuit.

**DOCUMENT REQUEST NO. 18:** For any time periods, any documents related to internal wage and hour investigations.

**DOCUMENT REQUEST NO. 19:** For any time periods, all documents relating to the claims or defenses at issue in this case or other similar lawsuits, administrative inquiry or administrative investigation.

**DOCUMENT REQUEST NO. 23:** For any time periods, all documents in the possession of Farmland employees concerning wage and hour laws, including in-house counsel.

**DOCUMENT REQUEST NO. 27:** For any time periods, all documents relating to any lawsuit that has been served or filed against Farmland arising out of alleged Fair Labor Standard Act or state wage and hour violations.

**DOCUMENT REQUEST NO. 36:** All documents in the possession of Farmland employees concerning Missouri wage and hour laws, including in-house counsel.

**DOCUMENT REQUEST NO. 37:** For any time periods, all documents generated from or relating to any Missouri regulatory claims, wage and hour citations, violations, inquiries, investigations or fines arising from an alleged failure to pay overtime or full compensation for production and support employees at the Milan plant.

**DOCUMENT REQUEST NO. 54:** All electronically stored information relating to any other donning and doffing litigation against Farmland, including but not limited to cases captioned *Morales v. Farmland Foods, Inc.*, No. 8:08cv00504 (D. Neb.); *Androy v. Farmland Foods, Inc.*, No. 5:07cv04016 (N.D. Iowa); and *Churchill v. Farmland Foods, Inc.*, No. 4:06cv04023 (C.D. Ill.).

**DOCUMENT REQUEST NO. 55:** For any time periods, any settlement agreements entered into by Farmland relating to any donning and doffing claims.

Plaintiffs indicate these documents are all proper subjects of discovery, and that the "temporal and geographic scopes of these requests are necessary [sic] broad because Farmland placed its collective corporate knowledge at issue in this case." Doc. No. 75, p. 10. Plaintiffs indicate this information is relevant to Farmland's defense that it complied with wage and hour law in good faith and did not willfully violate the FLSA; plaintiffs state that these defenses are common to all putative class members and thus support certification. Defendant responds that these requests exceed the scope of the current lawsuit, as they seek documents related to other lawsuits, entities, decision-makers, and

time periods.  Defendant indicates that beyond this information being irrelevant as to the merits of the present case, it is not relevant to whether the Court should certify the existing claims against Farmland as to the proposed class of Milan employees.

Plaintiffs' motion to compel as to these requests is **DENIED**.  In particular, plaintiffs' requests exceed the proper scope of Phase One discovery, as they seek information relevant to Farmland's defenses, as well as information about other lawsuits (which information appears to be irrelevant to the question of whether a class or collective action should be certified as against Farmland under the facts of this case).  Further, plaintiffs' requests for discovery for "any time periods" and any locations is overbroad.

F.     More than a "sample" production of payroll and punch-clock procedures

Plaintiffs seek responses to the following requests:

**DOCUMENT REQUEST NO. 21:** All documents related to Farmland payroll procedures, including any documentation related to the development of such procedures.

**DOCUMENT REQUEST NO. 22:** All documents related to Farmland punch-clock procedures, including but not limited to any documentation related to the development of such procedures, instructions to production and support employees concerning such procedures, as well as any instructions posted on or near time-clocks at the Milan plant.

Plaintiffs indicate that documents related to payroll and punch-clock procedures are discoverable; plaintiffs indicate these should not be limited to the Milan plant or three years prior to the filing of Plaintiffs' complaint because the payroll and punch-clock procedures likely were developed prior to July 2007 and at corporate offices or elsewhere (and not in Milan).  Plaintiffs complain that defendant produced only sample responsive documents to these requests, without defining what "sample" meant.

Defendant responds that it used the phrase "sample responsive documents" to indicate that it provided plaintiffs with a representative example of the document as opposed to every copy of a document that may have existed in Farmland's facility (such as producing one copy of Farmland's Production Employee Handbook as opposed to

23

locating every copy that had ever been printed and produced to every employee and thus producing thousands of copies of the same document). Defendant also indicates that payroll and punch-clock procedures at other facilities and prior to the limitations period are not relevant to plaintiff's claims.

Plaintiffs' motion to compel as to Request Nos. 21 and 22 will be **GRANTED IN PART**. Defendant shall produce documents responsive to these requests from the period beginning two years prior to the start of the limitations period (April 29, 2005) to the present, and from the Milan facility and any decisions made at other locations that affect the payroll and punch-clock procedures at the Milan facility. In all other aspects, plaintiffs' motion to compel will be **DENIED.**

**DOCUMENT REQUEST NO. 24:** For any time periods, any communications to production and support employees relating to "plug time" payments.

Plaintiffs indicate that the temporal and geographic scope of this request is necessarily broad "to uncover a complete history of communications regarding plug time payments to employees at Milan and elsewhere." Plaintiffs indicate defendant has confirmed it has responsive documents but has not supplemented same. Plaintiffs indicate information regarding plug time will likely support plaintiffs' claims of commonality, typicality, and similarity. Again, the Court finds that the temporal and geographic scopes proposed by plaintiffs are unnecessarily broad. Plaintiffs' motion will be **GRANTED IN PART**, however, and defendant shall produce documents responsive to this request from the period beginning two years prior to the start of the limitations period (April 29, 2005) to the present, and from the Milan facility and any decisions made at other locations that affect the plug-time payments at the Milan facility. In all other aspects, plaintiffs' motion to compel will be **DENIED.**

G.     Basic information concerning its corporate structure

Plaintiffs seek responses to the following requests:

**DOCUMENT REQUEST NO. 48:** All documents that reflect the corporate relationships amongst and between Smithfield Foods, Inc., Farmland Foods, Inc., Premium Standard Farms, Inc. and Premium Standard Farms, LLC. Included without limitation in this document request are acquisition agreements, asset purchase agreements, merger agreements, transfer of ownership agreements and operating agreements.

**DOCUMENT REQUEST NO. 49:** All documents that reflect the identities of the boards of directors for Smithfield Foods, Inc., Farmland Foods, Inc., Premium Standard Farms, Inc. and Premium Standard Farms, LLC.

**DOCUMENT REQUEST NO. 50:** All documents that reflect the ownership interests of the Milan plant.

Plaintiffs indicate that the corporate hierarchy is relevant to determine who the corporate decision-makers might be, the proper custodians for ESI searches, and who might be considered an employer under the FLSA. Plaintiffs indicate the temporal and geographic scopes of these requests are broad to "uncover a complete list of potential corporate decision-makers, and the complete history of the Milan plant's ownership and Farmland's corporate relationships with its predecessor corporations and parent corporations."

Defendant responds that (1) plaintiffs are seeking information that is irrelevant as to the claims pled in their Amended Complaint, as named plaintiffs have not worked at other facilities or for any other entities, and thus would have no standing to sue the other entities; and (2) plaintiffs could have simply asked for the documents related to the decision-makers for the donning and doffing pay policies at the Milan facility in effect during the relevant limitations period, but they did not do so.

Plaintiffs reply that it is not true that they did not ask for documents related to the decision-makers for the donning and doffing policies at the Milan facility–plaintiffs state these were requested by Nos. 10-12, 15, 19, 21, 24, 30, 32, 48 and 49. Plaintiffs also assert that they are not barred from seeking discovery as to non-parties by Iqbal and Twombly.

Although the Court agrees with plaintiffs that the information sought is not barred by

<u>Twombly</u> and <u>Iqbal</u>, the Court finds that a superior way to get specific information about corporate structure would be through interrogatories. Plaintiffs' motion to compel production of documents will be **DENIED** at this time, subject to reassertion if plaintiffs are unable to garner information about corporate structure through use of properly crafted interrogatories. Plaintiffs are further cautioned that the Court is of the opinion that such interrogatories should be limited at this time to the corporate structure relevant to the Milan plant and the parent and predecessor corporations of the Milan plant, and should be limited to the time periods from April 29, 2005 to the present.

      H.     Litigation holds and preservation efforts.

      Plaintiffs seek responses to the following requests:

**DOCUMENT REQUEST NO. 52:** Any documents relating to litigation holds or preservation efforts relating to this litigation.

**DOCUMENT REQUEST NO. 53:** Any documents relating to litigation holds or preservation efforts relating to any other donning and doffing litigation against Farmland, including but not limited to cases captioned *Morales v. Farmland Foods, Inc.*, No. 8:08cv00504 (D. Neb.); *Androy v. Farmland Foods, Inc.*, No. 5:07cv04016 (N.D. Iowa); and *Churchill v. Farmland Foods, Inc.*, No. 4:06cv04023 (C.D. Ill.).

      Plaintiff indicates litigation against Farmland related to donning and doffing liabilities has been pending since at least 2006 (as to other plants, apparently). Therefore, plaintiffs suggest defendant ought to have evidence readily accessible and preserved dating back to 2003 at least. Plaintiffs state that the litigation holds and preservation efforts of defendant should demonstrate whether information related to donning and doffing litigation is readily accessible, preserved, and able to be produced with little burden. Plaintiffs further argue that since Farmland has not produced evidence in this matter from prior to 2007, plaintiffs have a "reasonable basis to conclude that Farmland may have spoliated relevant evidence."

      Defendant responds (1) the request is too broad, seeking information about any documents in this and any other litigation; (2) litigation holds are not relevant to issues of

class or collective action certification; (3) litigation holds and preservation efforts are protected by work product and attorney-client privilege; (4) Request No. 53 is clearly impermissible as it relates only to other litigation; and (5) the mere existence of documents does not entitle plaintiff to those documents.

At this early stage of litigation, it is entirely premature for plaintiffs to argue that there has been spoliation of the evidence. Further, the cases cited by plaintiffs are distinguishable from the present matter, in that in one of the cited cases, <u>Goodman v. Praxair Services, Inc.</u>, 632 F.Supp.2d 494 (D. Md. 2009), the Court was considering sanctions <u>after</u> it was determined that defendant had spoliated evidence. There is nothing in <u>Goodman</u> suggesting that a litigation hold was produced in discovery to the other side, or that the court in that case would require same. In the other, <u>Major Tours, Inc. v. Colorel</u>, 2009 WL 2413631 (D. N.J. August 4, 2009), the Court noted that "As a general matter hold letters are not discoverable, particularly when a party has made an adequate showing that the letters include material protected under attorney-client privilege or the work product doctrine." <u>Id.</u> at *2. However, when spoliation occurs, the letters are discoverable. <u>Id.</u> In <u>Major Tours</u>, the underlying complaint was filed in 2005, the litigation hold apparently was not instituted until 2007, and the spoliation hearing/ruling occurred in 2009. The current matter is not even close to the facts presented in <u>Major Tours</u>. Plaintiffs' motion to compel as to litigation holds and related documents is **DENIED.**

## V.     Plaintiffs' Motion to Compel (Doc. No. 76)

Plaintiffs request that the Court enter an order compelling the production of ESI responsive to plaintiffs' document requests. Plaintiff indicates that defendant has refused to produce ESI, and plaintiffs seek a court order compelling immediate production of ESI, ordering defendant's attorneys to identify all additional custodians at Farmland and Smithfield Foods, and to produce all responsive ESI, including the e-mail accounts of George Richter and Marc Kuemmerlein, and "prohibiting Farmland from refusing to respond

to any other forms of discovery that may help Plaintiffs identify further relevant ESI custodians."  Plaintiffs also suggest the Court might want to consider appointing a special master.

In opposition, defendant indicates that plaintiffs have mis-characterized the status of this case.  Defendant states "Plaintiffs refused to provide Farmland with a list of proposed individuals and search terms related to electronically stored information ("ESI"), so Farmland submitted its own proposal.  Plaintiffs did not submit a counterproposal, but instead now demand in their Motion that Farmland produce ESI regardless of its relevancy and without first allowing Farmland the opportunity to assess the adequacy of its ESI proposal."  <u>See</u> Doc. No. 80, pp. 1-2.  Farmland also requests that it be allowed to undertake the searches identified in its proposal and report to the Court as to whether the proposal was sufficiently tailored based on the documents yielded (and to allow additional time for refinements), and that the Court further limit ESI discovery to the Milan facilities and policies that were in effect during the three-year limitations period.  Defendant argues that it should not be penalized for any delay in ESI discovery, as plaintiffs are responsible for the delay in that they have "never propounded any interrogatories asking Farmland to describe its donning and doffing policies and identify who was involved in the decision-making process."  Doc. No. 80, p. 4.  Defendant also notes that plaintiffs have not deposed anyone yet; the only depositions that have taken place are Farmland's depositions of the named plaintiffs.

In a footnote in reply, plaintiff complains that Farmland has taken them to task for not propounding interrogatories, stating, "[g]iven Farmland's response to Plaintiffs' deposition notice on the same topics, it is unlikely Plaintiffs would encounter any greater success having propounded interrogatories asking for the same information."  Doc. No. 86, p. 3. n. 3.

The Court cannot agree with plaintiffs' assessment of the situation.  Interrogatories

are a superior means of requesting the information sought by plaintiffs, yet to-date plaintiffs have not propounded interrogatories directed at identifying donning and doffing policies and those individual at Farmland who were involved in decision-making. Interrogatories avoid problems associated with 30(b)(6) depositions, and would (hopefully) not lead to the production of much information of limited relevance (as requests for production could generate). Although the Federal Rules provide that discovery can take place in any sequence absent a court order to the contrary (see Fed. R. Civ. P. 26(d)(2)(A)), the Court finds that in this instance a court order is necessary. Plaintiffs are **DIRECTED** to propound interrogatories directed at many of the matters in their requests for production and 30(b)(6) depositions before taking the 30(b)(6) deposition of a corporate representative and before seeking to compel further production of ESI.

The Court will now turn to plaintiffs' specific requests for ESI.

A.    Immediate production of all non-privileged ESI from the 18 custodians identified in Farmland's January 19, 2011 letter.

Plaintiffs state that discovery has been delayed far too long. Plaintiffs further argue that Farmland has requested all other discovery be bifurcated, but that ESI production should only be done once. Plaintiffs further argue that "Farmland has also refused to respond to any discovery that would assist the Plaintiffs in identifying ESI custodians."[5] Plaintiffs further indicate that they must reserve their rights to add search terms and custodians if same are identified in further discovery. Plaintiffs seek such production by February 18 (a date that has already passed).

Defendant disagrees with plaintiffs' contentions. Defendant responds that after conversations over the course of several months, it made the ESI proposal in its January 19, 2011 letter. Defense counsel states that this was an attempt to begin the process of

---

[5]Again, it seems that if plaintiffs had propounded interrogatories as to these issues, they already would have the responses they seek.

creating a proper ESI protocol, and requested plaintiffs advise if they were in agreement or whether they wanted additional search terms or individuals. Defendant states that "[w]ithout even submitting a counterproposal to Farmland, Plaintiffs contacted the Court regarding a purported ESI 'dispute,'" and therefore plaintiffs' motion is improper because they have not adequately met and conferred with Farmland in a good faith effort to resolve their dispute.

Defendant responds that plaintiffs' contention that defendant would only review and produce ESI once mis-characterizes the proposal. Defendant states that they reasonably want to avoid the costly and time-consuming process of search for and reviewing documents, only to later have plaintiffs demand additional searches involving different search terms and individuals. Defendant states that its letter proposed a sampling approach, such that once searches were conducted, defendant would evaluate whether the parameters of the searches are reasonable in light of the number of responsive hits returned in relation to the number of overall hits returned. See Doc. No. 80, Ex. A.

Defendant indicates that it would be impossible for it to search, review, and then produce documents by February 18. Defendant states that it will likely incur unnecessary costs in attorney review time and e-discovery vendors if it is required to produce "any and all" documents regardless of relevance, without first determining whether the search parameters are reasonable. Defendant notes that the Advisory Committee Notes for both Rules 26 and 34 authorize the initial use of sampling of sources prior to production, in order to keep costs at reasonable levels.

Plaintiffs respond that (1) defendant does not reconcile the inconsistency of its position that plaintiffs are entitled to ESI only once, while objecting to certain requests for production on grounds that they are merits issues (not class certification issues); (2) defendant has failed to demonstrate any burden associated with responding to the e-discovery requests; (3) the sampling methodology proposed by Farmland should be

rejected, because it uses search terms and custodians selected only by defendant, and proposes providing documents to plaintiff only if Farmland determined the proposed searches were appropriate based on results yielded. Plaintiffs suggest that discovery has been delayed far too long for Farmland to be allowed to make such unilateral determinations. Plaintiffs indicate that Farmland's search should begin now, and either (1) only ESI that is privileged and properly logged should be withheld, or that (2) if the Court adopts Farmland's sampling proposal, the Court should order that all non-privileged "hits" be provided to both parties so that each has an equal opportunity to determine the efficacy of the sampling.

The Court agrees with defendant in full, and plaintiffs' motion to compel immediate disclosure without first performing a sampling is **DENIED**. Plaintiffs are not entitled without Court approval to such a broad search. Instead, the Court must weigh the relevance and cost factors (as detailed in its previous Order, Doc. No. 28). Moreover, defendant's sampling proposal appears to be a reasonable way to begin the process (although the Court believes that plaintiff may request further ESI in Phase Two discovery). Therefore, the Court **DIRECTS** defendant to begin its proposed sampling protocol as soon as practicable. As requested by plaintiffs, all non-privileged "hits" should be provided to both parties so both sides may have an opportunity to determine the efficacy of the sampling.

B.     No temporal/geographic limitations

Plaintiffs argue that no temporal or geographic limitations should be imposed, given that at this stage, Farmland is only proposing to search available media, and there would be no significant burden associated with producing all info that is available.[6]

In opposition, defendant notes that plaintiffs' motion does not take into account Rule

---

[6] Notwithstanding plaintiffs' suggestions, the Court believes there could be significant cost concerns, if defendant has to pay for the review of the information generated by an unlimited search (much of which will be irrelevant, especially if there are no temporal or geographic limitations), create a privilege log, etc.

26(b)(2), which limits the scope of discovery utilizing a proportionality test (limiting discovery if it is "unreasonably duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive." Fed. R. Civ. P. 26(b)(2)(C)(i)). Defendant also argues that plaintiffs' motion to compel skips the first step: an analysis of whether the information sought is relevant.

Plaintiffs' motion to compel discovery without temporal or geographic limitations will be **DENIED.**  For discovery of ESI, plaintiffs' inquiry must be narrow and subject to relevancy and cost assessments.  Notwithstanding the foregoing, the Court will allow discovery on donning and doffing issues beginning <u>two years prior</u> to the start of the limitations period (April 29, 2005).  The Court will also allow discovery limited to the Milan facility and any decisions made at other locations that affect the donning and doffing pay policies/practices at the Milan facility.

C.     Current or Former Farmland Corporate Executives

Plaintiffs suggest that defense counsel have refused to identify any top-level corporate executives from Farmland or Smithfield. Plaintiffs also make the following request: "Farmland's corporate executives should be ordered to determine whether other Farmland current or former executives were involved in donning and doffing issues such that they may have received e-mails responsive to the requests above . . . .  If these executives admit to any knowledge or involvement, or to receiving donning and doffing related e-mails, ESI for these executives and all others should be searched and produced as well." Defendant responds that this is just another attempt to demand unlimited discovery that is not properly tailored to the claims pled by plaintiffs.

Plaintiffs' motion to compel ESI production as to corporate executives will be **DENIED.**  At this point, plaintiffs have not conducted the preliminary discovery that would enable the Court to determine whether production of ESI from corporate executives would be relevant.  In particular, plaintiffs appear to have done no depositions of persons listed

in defendant's Rule 26(a) disclosures, nor have plaintiffs propounded interrogatories regarding these issues.

      D.    Production of ESI from <u>other</u> donning and doffing cases

Plaintiffs argue that to the extent ESI has been produced in other donning and doffing cases, it should be produced here, because there is no burden associated with its production. Defendant responds that documents produced in other lawsuits have no bearing on plaintiffs' claims in this suit, and especially have no bearing on whether this Court should certify the existing claims against Farmland. Plaintiff replies that this objection rings hollow, given that one of the reasons offered for changing donning and doffing pay policies in December 2007 was prior precedent.

Plaintiffs' motion regarding production of ESI from other donning and doffing cases will be **DENIED.** Before ordering such production, the Court must weigh the relevance of the information versus the cost. At this point, it appears that documents produced in other lawsuits have very little relevance to the current action.

      E.    Production of ESI from <u>Smithfield Foods</u> Executives

Plaintiffs indicate that ESI from Smithfield Foods should be produced, as Rule 34(a) requires a party to produce not only those things within its possession or physical custody, but also responsive documents that are within a party's control. Plaintiff asserts that Missouri federal courts determine the scope of control by consideration "(1) the corporate structures of the party to whom the discovery is directed and the non-party in physical possession of the requested documents; (2) the non-party's connection to the subject matter of the litigation; and (3) whether the non-party will feel the benefits or burdens of any award in the case." <u>Orthoarm, Inc. v. Forestadent USA, Inc.</u>, No. 4:06-cv-730 CAS, 2007 WL 1796214, at *2 (E.D. Mo. June 19, 2007). Plaintiffs indicate that here, the overlapping corporate structure of Farmland and Smithfield Foods weighs in a finding of "control," as Farmland is part of Smithfield Foods' "Pork Group." Defendant has also produced

Smithfield Foods documents already in this litigation (citing to the Smithfield Code of Business Conduct and the Smithfield Foods Human Rights Policy). Plaintiffs also assert that Smithfield Foods is connected to the subject matter of this litigation, as each new hire at Farmland must agree to follow Smithfield's policies during his employment at Farmland. Plaintiffs further assert that a finding of liability as to defendant will affect Smithfield Foods, both financially and with respect to the litigation pending against it and its various subsidiaries across the country.

Alternatively, plaintiffs suggest that if the Court finds they have not met their burden of demonstrating control sufficient to compel production, plaintiffs should be allowed to proceed with targeted discovery regarding the relationship between Farmland and Smithfield, "including but not limited to the production of detailed organizational charts and a deposition of Farmland's corporate designee pursuant to Fed. R. Civ. P. 30(b)(6)."

Defendant again states that plaintiffs "have not presented any evidence and provide no basis for their claim that other 'top-level corporate executives' have had any involvement in decisions related to pay policies for donning and doffing." Doc. No. 80, p. 14. Defendant further argues that <u>Iqbal</u> prevents the discovery sought by plaintiff.

Plaintiffs' request for ESI discovery of Smithfield Foods will be **DENIED**. Before being entitled to ESI discovery from Smithfield Foods, plaintiffs must propound and receive discovery that would make ESI from Smithfield Foods relevant to their claim against Farmland Foods. Then, the Court may reconsider whether such discovery of Smithfield Foods is necessary.

F.     Special Master

Plaintiffs assert that several significant discovery motions have been filed and briefed in this matter, and that if the Court deems it helpful, it may wish to appoint a special master under Fed. R. Civ. P. 53 for e-discovery in particular or broader class action discovery in general. Plaintiffs assert they "are happy to proceed before a master at shared

cost and expense if the Court desires to make such a determination."  Doc. No. 77, p. 14.

Defendant opposes plaintiffs' request for a special master, as the appointment of a special master is the exception, not the rule.  Defendant states that plaintiffs have not demonstrated that this case involves exceptional discovery issues.  Defendant further notes that in the cases cited by plaintiffs in support of appointment of special masters, all parties consented to the appointment.

Plaintiffs' request for a special master will be **PROVISIONALLY DENIED**.  The Court may reconsider this request depending on how discovery proceeds following entry of this Order.

### VI.    Plaintiffs' Unopposed Motion to Amend the Scheduling Order (Doc. No. 89)

On February 25, 2011, shortly after the four discovery motions became ready to rule, plaintiffs filed the pending motion to amend the scheduling order.  Plaintiffs request the Court enter an Order (1) suspending the deadlines contained in the September 23, 2010 Scheduling Order (Doc. No. 38), and (2) allowing the parties two weeks from the date the Court rules on the parties' pending discovery motions to submit a joint report proposing new deadlines for Phase One discovery and certification briefing.

Although the Court recognizes that the current deadline for Phase One discovery (April 1, 2011) is no longer workable, the Court cannot agree with the parties' proposal to have absolutely no deadlines in place for two weeks, particularly considering that the parties were unable to agree on any dates in the first proposed scheduling and trial order (see Doc. No. 31).  Accordingly, plaintiffs' motion to amend the Scheduling Order will be **DENIED**.  The Court will enter an amended Scheduling and Trial Order by separate Order.

### VII.    Motion to Withdraw as Counsel for Plaintiff Richard A. Truitt (Doc. No. 79)

On February 4, 2011, counsel filed the present motion to withdraw.  Counsel indicated that over the past four months, Mr. Truitt has not participated in discovery and

has not responded to counsel's telephone calls, messages and written letters. Counsel indicated they made a final attempt to reach out to Mr. Truitt via certified mail on January 24, 2011, but Mr. Truitt never responded.

On February 10, 2011, the Court ordered Mr. Truitt to show cause in writing on or before March 2, 2011, why T. Joseph Snodgrass, Kelly Swanson, Troy Tatting, James J. Simeri, Matthew R. Fields, David T. Butsch, and Andrew Farwell, as well as the law firms Larson King, LLP, Butsch Simeri & Fields, LLC, and The Farwell Law Firm, LLC should not be allowed to withdraw as counsel for Mr. Truitt. Mr. Truitt was advised that his written response must be filed on or before March 2, 2011. Mr. Truitt was further advised that if counsel were allowed to withdraw and new counsel were not retained by March 15, 2011, plaintiff would be expected to proceed pro se in the prosecution of his lawsuit. Nonetheless, to-date, no response by Mr. Truitt has been filed.

Accordingly, it is hereby ordered that counsel's motion to withdraw (Doc. No. 79) is **GRANTED**. Plaintiff Truitt will be expected to proceed pro se in this matter.

VIII.    Conclusion

For the foregoing reasons:

1)    Defendant's Motion for Protective Order (Doc. No. 62) is **GRANTED IN PART** and **DENIED IN PART**;

2)    Non-Party Smithfield Foods, Inc.'s Motion for Protective Order (Doc. No. 68) is **GRANTED IN PART** and **DENIED IN PART**;

3)    Plaintiff's Motion to Compel Discovery Concerning Plaintiffs' First Set of Requests for the Production of Documents (Doc. No. 74) is **GRANTED IN PART** and **DENIED IN PART**;

4)    Plaintiffs' Motion to Compel Discovery Concerning Electronically Stored Information (Doc. No. 76) is **DENIED**, and defendant's proposed sampling protocol is **APPROVED** as a starting point for analysis of ESI;

5)    Plaintiffs' Unopposed Motion to Amend the Scheduling Order (Doc. No. 89) is **DENIED**; and

6) Attorneys T. Joseph Snodgrass, Kelly Swanson, Troy Tatting, James J. Simeri, Matthew R. Fields, David T. Butsch, and Andrew Farwell, as well as the law firms Larson King, LLP, Butsch Simeri & Fields, LLC, and The Farwell Law Firm, LLC's Motion to Withdraw as Counsel for Plaintiff Richard A. Truitt (Doc. No. 79) is **GRANTED.**

**IT IS FURTHER ORDERED** that the Clerk of the Court send a copy of this order by regular and certified mail to plaintiff at the following address:

Richard Adam Truitt
48262 Timber Road
Milan, MO 63556

**IT IS SO ORDERED.**

Dated:___03/28/11___
Kansas City, Missouri

**/S/ FERNANDO J. GAITAN, JR.**
Fernando J. Gaitan, Jr.
Chief United States District Judge